IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JEREMY THOMAS, | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION 17-0399-TFM-MU |
| | : | |
| WARDEN CYNTHIA STEWART, | : | |
| Defendant. | : | |

**REPORT & RECOMMENDATION**

Plaintiff Jeremy Thomas, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). After careful review, it is recommended that Defendant's Motion for Summary Judgment be **GRANTED**, and that Plaintiff Thomas' action be dismissed with prejudice.

**I.  Summary of Allegations.**

Plaintiff Thomas alleges in his complaint that on July 27, 2017, while he was incarcerated at Holman Correctional Facility ("Holman") (and housed in the Segregation Unit), he was attacked by Inmate Willie Ricks as Thomas walked back to his cell after taking a shower. Plaintiff Thomas claims that the assault occurred due to Defendant Warden Stewart's negligence and wantonness by ignoring a known risk of harm to Thomas' safety and for failing to provide Thomas with the security guaranteed by the Eighth Amendment, namely failing to provide adequate staffing at Holman. (Doc. 1 at 5-6).

According to Plaintiff Thomas, he was one of six inmates in the shower on July 27, 2017, as was Inmate Willie Ricks. Thomas states that when he finished showering, he called for Correctional Officer Mason, who was the sole officer assisting with conducting showers in the Segregation Unit, to escort him back to his assigned cell. (Doc. 1 at 4). Officer Mason handcuffed Thomas with his hands behind his back, removed Thomas from the shower, and Thomas began walking back to his cell alone. As Thomas walked past other inmates' cells, he began to hear inmates yelling and warning him to look behind him. When Thomas turned around, he saw Inmate Willie Ricks, "who had broken out the shower he was locked in" and was "running up behind [Thomas] with a prison made knife in his right hand." (Doc. 1 at 5). Inmate Ricks caught up with Thomas and (holding the knife to Thomas' stomach) began punching and slapping him. Officer Mason responded to the commotion and "ran up behind" Inmate Ricks "grabb[ing] the knife" from Inmate Ricks, and Officer Mason, Officer Lee, and Officer James pulled Inmate Ricks off of Thomas and secured Inmate Ricks in his cell. (Id.). Plaintiff Thomas was also escorted to his cell and then taken to the health care unit for a medical assessment, where an examination revealed tenderness to Thomas' neck but no obvious markings, no swelling, and no trouble swallowing. (Doc. 18-3).

Plaintiff Thomas claims Defendant Stewart is liable for failing to protect him from the inmate assault and cruel and unusual punishment because Inmate Ricks has "a well-known history" of violence, including assaults on inmates and officers. (Doc. 1 at 7). Thomas alleges that prior to July 27, 2017, Thomas was "involved in a verbal altercation" with Inmate Willie Ricks (Doc. 1 at 4) and an unnamed officer was "forced to give up his job as a correction officer because of life threatening head injuries he suffered at the

2

hands of Inmate Willie Ricks." (Doc. 1 at 6) (alterations in capitalization). And, though unrelated to harm caused by Inmate Willie Ricks, Plaintiff Thomas further alleges that Officer Bettes "lost his life while performing his duties because of the Defendant's negligence and wantonness in failing to maintain adequate staffing," when there "was no one to assist him." (Id. at 6) (alterations in grammar and capitalization). Plaintiff Thomas requests monetary damages in the amount of $50,000.00 per claim.

Defendant Stewart has answered the suit, denying all asserted allegations, and filed a special report in support of her denial. (Docs. 17, 18). After review of the pleadings, the court converted Defendant's answer and special report to a motion for summary judgment, to which Plaintiff Thomas has failed to respond.[1] (Doc. 25). This motion is now ripe for consideration.

**II.    Summary Judgment Standard.**

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)[2]; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Garczynski v. Bradshaw, 573 F.3d 1158,

---

[1]    Plaintiff was granted an extension to respond to Defendant's motion for summary judgment and cautioned that the failure to file a response to the motion by April 8, 2020 may result in dismissal of the action. (Doc. 30). To date, Plaintiff has filed no response to the motion.

[2]    Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment[, however,] remains unchanged. . . . The amendments [have] not affect[ed] continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments.

1165 (2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'"(emphasis omitted)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. See Anderson, 477 U.S. at 255.

ThyssenKrupp Steel USA, LLC v. United Forming, Inc., 926 F. Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013) (citations omitted).

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." Garczynski, 573 F.3d at 1165 (internal citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id*. In addition,

4

"[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); see also Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations." (citations omitted) (unpublished)).[3]

## III. Discussion.

### A. Absolute Immunity.

To the extent Plaintiff attempts to sue Defendant Stewart in her official capacity and seeks any type of monetary award, the defendant is entitled to absolute immunity from suit, as official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, see Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, see Seminole Tribe v. Florida, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, see

---

[3] "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." 11th Cir. R. 36-2.

5

> Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

Id., quoting in large measure Lancaster v. Monroe Cnty, 116 F.3d 1419, 1429 (11th Cir. 1997). Accordingly, Defendant Stewart is entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from her in her official capacity. Lancaster, 116 F.3d at 1429.

**B. Deliberate Indifference to Safety.**

Under the Eighth Amendment, prison officials have a duty to "ensure reasonable safety" of inmates, "a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." Farmer v. Brennan, 511 U.S. 825, 844-845. However, "a prison custodian is not the guarantor of a prisoner's safety", Purcell ex rel. Morgan v. Toombs Cnty., 400 F.3d 1313, 1321 (11th Cir. 2005) (citation omitted), and "[i]t is not[] every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. Prison officials must "take reasonable measures to guarantee the safety of the inmates", Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984), but there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." Farmer, 511 U.S. at 838. It is a defendant's deliberate indifference to a known, significant risk that violates the Eighth Amendment. Lane v. Philbin, 835 F. 3d 1302 (11th Cir. 2016).

To establish a § 1983 claim for deliberate indifference to his safety (be it failing to protect him or failing to provide adequate security), a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3)

6

causation." Id at 1307.  The first, objective, element requires the plaintiff to show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." Id.  The second, subjective, element requires showing that the official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . also draw the inference." Farmer, 511 U.S. at 837.  Again, it is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key. See, e.g., Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed 2d 251 (1986).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." Id.

Plaintiff does not allege that he complained to Defendant, or any prison official, that he was in danger of being attacked by Inmate Ricks nor that he feared Inmate Ricks. The record contains no evidence suggesting that Plaintiff notified any prison official of any prior incident or threat by Inmate Ricks from which they could infer a substantial risk of harm existed to Plaintiff prior to the July 27, 2017 attack.[4]  Compare Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1583 (11th Cir. 1995)(citing Farmer, 511 U.S. at 843) ("[A]n official may not escape liability merely by showing that he did not know the claimant was likely

---

[4] It is undisputed that Plaintiff was attacked by Inmate Willie Ricks on July 27, 2017.

7

to be assaulted or that an assault would be committed by the specific prisoner who eventually committed the assault,."), with McBride v. Rivers, 170 F. App'x 648, 655 (11th Cir. 2006) (Vague allegations of "problems" with another inmate are insufficient to establish that defendant officers were aware of a specific risk of serious harm.). The record is further devoid of evidence that the environment of Holman, in particular the Segregation Unit showers, was so violent and hostile as to pose an objectively serious substantial risk of serious harm to him, despite Plaintiff's dual assertions that: (1) Inmate Ricks previously injured an officer forcing the officer to resign, and (2) that Officer Bettes lost his life while working at Holman. Such facts are far too tenuous from Plaintiff's claim of an inmate-on-inmate attack following a shower on July 27, 2017 to support Defendant having had knowledge of a risk of harm to Plaintiff and, further, fall substantially short of establishing a deliberate indifference claim against Defendant Stewart (or any officer).[5]

---

[5]  Review of Eleventh Circuit law confirms the high hurdle of establishing that a substantial risk of serious harm exists based on the general threat posed by inmate-on-inmate violence. For instance:

In Harrison v. Culliver, 746 F.3d 1288 (11th Cir. 2014), the plaintiff presented evidence of 33 incidents on inmate-on-inmate violence over the span of three and a half years, four of which occurred in the same hallway where the assault of the plaintiff occurred, in a prison which housed 800-900 inmates. The Court concluded that the evidence presented was "hardly sufficient to demonstrate that [the institution] was a prison 'where violence and terror reign.'" Id. at 1300.

In Green v. Hooks, 2020 U.S. App. LEXIS 834 (11th Cir. Jan. 6, 2020), the record evidence that 28 reported incidents of sexual assault occurred over five years at the prison, which had a population of 1,500 inmates. While noting that sexual assault was "terrible", the Court found the numbers of incidents "did not rise to the level of demonstrating the [prison] was "a prison where violence and terror reigned." Id. at *34 (internal citation omitted).

Most recently, in Marbury v. Warden, 936 F.3d 1227 (11th Cir. 2019), the plaintiff affirmed he personally witnessed 15 inmate stabbings prior to the incident in which he was stabbed, he wrote letters to the warden asking to be moved to another dorm (he described his dorm as an "over-rated gang affiliated block"). Id. at 1231. The Court found the evidence insufficient to sustain an Eighth Amendment claim and clarified that

Plaintiff's assertions, instead, provide only a vague indication that at some undisclosed time, Inmate Ricks was involved in some sort of altercation with an unnamed officer and that at another undisclosed time, with unknown particulars and parties, another officer at Holman was killed. These isolated incidents do not establish that Defendant knew of a risk of harm to Plaintiff.

The Eleventh Circuit has repeatedly held that more than isolated incidents or general awareness of an inmate's violence or problematic nature is necessary to establish a defendant's subjective awareness of any risk of harm. See Harrison v. Culliver, 746 F.3d 1288, 1300 (11th Cir. 2014) (The warden's decision not to place more officers in an area of the facility which "may have improved security" did not create a substantial risk of harm.); Staley v. Owens, 367 F. App'x 102, 108 (11th Cir. 2010) (Isolated inmate assaults, which may have occurred over a span of several years, are "not sufficient to establish that there was a history of widespread abuses that supervisors failed to reasonably respond to."); Johnson v. Crosby, 135 F. App'x 375, 377 (11th Cir. 2005) (Defendants were entitled to summary judgment where allegations simply inferred that prison officials should have known that the inmate- attacker posed a threat to others due to his past behavior and general verbal threats because the plaintiff provided no evidence indicating he notified the defendants of any particularized threat by his attacker nor any fear he felt prior to the attack.); Chatam v. Adcock, 334 F. App'x 281, 293-294 (11th Cir. 2009) (The fact that an inmate attacker was a "problem inmate" with "violent tendencies" is insufficient to satisfy the subjective awareness requirement to establish deliberate indifference.).

---

precedent requires a plaintiff who alleges a generalized risk of harm to "point[] to specific features of a facility or its population rendering it particularly violent." Id. at 1235.

Accordingly, Plaintiff has failed to satisfy the objective and subjective elements of his Eighth Amendment claim.

Additionally, even if Plaintiff were able to establish that Defendant was aware of a risk of harm to him, the record confirms that Defendant (and the officers on duty) responded to the risk in a reasonable way and were not the cause of Plaintiff's harm. Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003) (A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk."); see also Farmer, 511 U.S. at 844-45 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). In the current case, Warden Stewart affirms by affidavit that the officers involved performed duties according to protocol, that is that an inmate out of his cell should be handcuffed, which Thomas was. (Doc. 18-1 at 2). Furthermore, the inmate attacker, Ricks, was secured in the shower per ADOC policy. (Id.). The record evidences that Inmate Ricks kicked the latch off of the shower door, "broke out" of the shower, and ran towards Thomas. (Doc. 1 at 5; Doc. 18-2 at 1, 3). Such actions can only be described as unforeseen and atypical of an ordinary shower routine. Accordingly, Plaintiff's claim that inadequate staffing caused his attack is merely conclusory and cannot support a claim of deliberate indifference. There is simply no record evidence which suggests the incident would have been prevented had another officer been assigned to the shower or that Holman's protocol, policies or regulations are insufficient or knowingly put Plaintiff at risk of harm. Instead, the record reflects that Inmate Ricks was already confined to a single-man segregation cell, isolated from other

inmates. And, notably, Officer Mason was near enough to Plaintiff when escorting him back to his cell at the time of the attack that he was able to stop the attack quickly, so that Plaintiff sustained little to no injuries. Additionally, two other officers were in close proximity to Plaintiff and were able to assist in stopping the attack and securing the attacker in his cell.[6] Consequently, it cannot be said that Defendant, or any officer, was deliberately indifferent to Plaintiff's safety.

### C. Respondeat Superior.

To the extent Plaintiff is suing Defendant in a supervisory capacity, his claim fails. It is undisputed that Defendant Stewart was not present at the time of the July 27, 2017 incident. Claims against Defendant Stewart are rooted in the theory of *respondeat superior* and are not cognizable in a § 1983 action. Edwards v. Ala. Dep't of Corrs., 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not sufficient to support [a] § 1983 claim. . . ."); see also Duff v. Steub, 378 F. App'x 868 (11th Cir. 2010) ("Deliberate indifference can be based on the defendant's personal participation in the allegedly unconstitutional conduct or on the defendant's actions as a supervisor."). In addition, Plaintiff does not provide any facts to causally connect Defendant Stewart to the occurrence of the incident or failure to prevent the incident by "'custom or policy" or with facts supporting "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from

---

[6] At best, Plaintiff presents a claim of negligence, which is insufficient to support a constitutional action. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) ("[N]egligence failure to protect an inmate from attack does not justify liability under § 1983.").

doing so." <u>Gonzalez v. Reno</u>, 325 F.3d 1228, 1235 (11th Cir. 2003). Accordingly, Plaintiff falls short of establishing any Eighth Amendment claim as to the July 27, 2017 incident.

**IV.     Conclusion.**

Based upon the foregoing, Plaintiff has failed to establish an Eighth Amendment violation against Defendant. Accordingly, it is recommended that Defendant's Motion for Summary Judgment be **GRANTED**, and Plaintiff Thomas' action be dismissed with prejudice.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**ORDERED** this **16th** day of **June, 2020**

                                              <u>s/ P. Bradley Murray</u>
                                            **UNITED STATES MAGISTRATE JUDGE**